LEIGH M. CLARK, Retired Circuit Judge.
A jury found this appellant guilty of burglary in the third degree, a Class C felony, which is committed if one “knowingly enters or remains unlawfully in a building with intent to commit a crime therein.” Alabama Criminal Code, § 13A-7-7. A sentence hearing was thereafter conducted at which, after due notice, the State proceeded against defendant pursuant to the Habitual Felony Offender. Act and introduced evidence showing two previous felony convictions. The court sentenced him to imprisonment for twenty-five years, it being recognized by all concerned that the limitations on a term of imprisonment on a Class C felony is “not more than 10 years or less than 1 year and 1 day (§ 13A-5-6(a)(3),” that on a conviction of a Class C felony after having “been previously convicted of any two felonies” a defendant “must be punished for a Class A felony (§ 13A-5-9(b)(l)),” and that on conviction of a Class A felony, the term is “for life or not more than 99 years or less than 10 years (§ 13A-5-6(a)(l)).”
All issues presented by appellant, three in number, pertain to the question of the sufficiency of the evidence to present a jury question as to defendant’s guilt or its sufficiency to withstand a motion for a new trial grounded on a claim that the verdict was contrary to the weight of the evidence. The issues presented call for a short summary of the evidence.
Joe C. Hagler testified on call of the State that he was the manager of Decatur Tire Center, the legal entity that owned the building that the defendant was charged with having entered or remained in unlawfully, that he had been at the place of business until 5:00 P.M. on January 12, 1982, and was at home in bed at approxi *795 mately 9:30 that night, having been aroused therefrom by someone from the Decatur Police Department reporting that Decatur Tire Center had been broken into. The witness described the premises of the company of which he was the manager and the adjoining premises of another company; the security system or the electric burglary alarm system of the building of Decatur Tire Center was one that could not be activated except by an entry into the building. He said that when he first arrived at the premises “there were so many officers there I couldn’t tell you one from the other.” He testified:
“A. I went on into my building and remained in there for approximately twenty-five minutes and finally I went out the door and tried to find one of the officers and they told me to stay there, that they would be there.
“Q. All right, sir. What did you discover out there that was out of the ordinary?
“A. Nothing when I first went into the building. I turned the alarm off. That released the police department’s red light. They asked me to unlock the rest of the building. I unlocked the door that goes into the service area and in turn goes back to the area where someone had broken in.
“Q. All right, sir. If you could, did you inspect the area where someone had broken in?
“A. I was getting to that. After I went into the service department, we have another storage area and that storage area has doors that have been paneled up. They are not sensitive, you might say. If you touch one of them they don’t go off. I discovered a hole large enough for a human to get inside the building and immediately I discovered we were about four tires short in our inventory. I knew where they were.
“Q. All right. That alarm system you have been describing out there, does the alarm sound on the premises?
“A. No, sir, directly to the police department. No sound on the inside.
“Q. So an intruder would not be aware that the alarm had gone off?
“A. No, sir.
“Q. Did you ever give any permission to that man sitting over there at the counsel table, James Clifton Guster or to a man named Chairs, to enter your building?
“A. No, sir.
“Q. And take your tires?
“A. No, sir.”
Five police officers, who arrived at the premises of Decatur Tire Center and the adjoining business of Consolidated Freight-way in prompt response to the security alarm, testified on call of the State. Two of them parked their car and approached the building on foot from opposite directions around a ehainlink fence that surrounded the premises of both companies. One of them “observed a black male jumping the fence and running away into the night.” A few minutes thereafter, two other officers arrested defendant while he was walking eastward along the edge of Highway 20 approximately 300 yards from the point where, according to appellant’s brief, “One of the first two officers had seen a man jumping the fence.” One of the officers mentioned then arrived at the scene of the arrest and identified this appellant as the man he had seen inside the Consolidated Freightway yard.
Toward the end of the search of the premises by the officers, an officer arrested one James Chairs, who was found on the premises.
Although James Chairs was not being tried and did not testify in this particular case, there seems to be no dispute whatever between the parties as to the guilt of James Chairs as one of the two men who had burglarized the alleged building and had taken therefrom two or four tires. There was testimony by a female friend of this appellant and James Chairs that the two had been at her home on January 12, 1982, playing cards between 4:00 P.M. and around 5:30 P.M. She said that at her request, appellant picked up her eight-year-old son at her mother’s house and returned him to the witness’s house around 6:30 P.M. She *796 also testified that it was possible that the appellant had returned to her residence sometime later in the evening, while she was in bed and did not notice.
The only witness for the defense, other than one character witness favorable to defendant, was the defendant himself. The defendant testified that he owned three motor vehicles and two of them were at the house of his friend, “Hilda Lampkin,” that day. He said that around 5:30 P.M. he and Chairs drove to pick up the son of Mrs. Lampkin and returned directly to her house with the boy. He further testified that he and Chairs re-entered the Lampkin residence and stayed until 8:00 or 8:30 P.M., whereupon he and Chairs left at the same time but drove away in separate vehicles, both vehicles belonging to the defendant. He said that he and Chairs worked together in the demolition business. According to appellant’s brief, appellant testified as follows:
“Appellant testified that he then drove to Twelfth Avenue, parked the car, and went to visit a female friend who was visiting from out of town. He stated that this friend was visiting at a project four or five blocks west of Hilda Lamp-kin’s house; that she was a romantic interest of Chairs’; and that Chairs did not know that Appellant was going to visit the friend. He stated that he parked his car around the corner from the friend’s residence because he did not want Chairs to know he was visiting her. “Appellant testified that he visited the friend for fifteen or twenty minutes and left around 9:00 p.m. He stated that when he left he decided to walk home, which was in an easterly direction from the place where the friend was staying at a distance of five or six blocks. He stated that he decided to walk home rather than driving in order to avoid the scrutiny of several people who were in the vicinity of his car.”
According to further testimony of defendant, while he was walking eastward on Highway 20, he thought he saw a person on the other side of the street, crossed the street to investigate, determined that the object was not a person, and re-crossed Highway 20, and after proceeding eastward along the south side of Highway 20 for a short distance, he was stopped by the police. He robustly denied being with Chairs at the time of the burglary and stoutly contended that he was not on the premises of Decatur Tire Center on the evening of January 12, 1982.
The parties have opposing views as to the value of testimony as to footprints between the vicinity of the burglary and the place where appellant was arrested, the appellant urging, with considerable plausibility, we think, that under the prevailing circumstances it was of little, if any, value. We find it unnecessary to attribute any value to it in concluding, which we do, that the other circumstances summarized above are sufficient to support the verdict of the jury and that the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.